UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN HERNANDEZ,<br><br>Defendant. | Case No. 15-cr-00576-JST-1<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>Re: ECF No. 21 |

Defendant Juan Hernandez has filed a motion to dismiss his indictment for violation of 8 U.S.C. § 1326, illegal reentry after deportation, arguing that his prior deportation in 2014 violated due process because the Immigration Judge ("IJ") failed to advise Hernandez of the possible relief of voluntary departure. ECF No. 21. The Court will deny the motion.

I.  **BACKGROUND**

Hernandez is a 25-year-old native of Mexico. ECF No. 1. According to his motion and supporting declarations, he was too young to recall when he arrived in the United States, but grew up in the San Francisco Bay Area, and began attending school in the United States in second grade. ECF No. 21 at 5-6. He has spent "his whole life" here and has no close ties to Mexico. Id. at 7. On April 4, 2011, Hernandez pled guilty to assault with a deadly weapon, in violation of Cal. Penal Code § 245(a)(1). ECF No. 22-2 at 2. He received a sentence of two years plus a three-year enhancement for infliction of great bodily injury, for a total of five years. Id. at 4.

On August 26, 2014, Hernandez was taken into custody by Immigration and Customs Enforcement. ECF No. 21-1 at 11. He requested a removal hearing before the Immigration Court, which occurred on September 15, 2014. ECF No. 21-1 at 19. At the hearing, Hernandez stated that he would "like to go home," and acknowledged that he was waiving his right to an attorney

and to appeal.[1]  Id.  Hernandez was asked by the IJ whether he had been convicted of assault with a deadly weapon in April 2011 and responded affirmatively.  Id.  The IJ did not discuss the possibility of voluntary removal with Hernandez.  The IJ found by clear and convincing evidence that the allegation against Hernandez had been sustained, and ordered him removed.  Id. at 21.

On December 10, 2015, an indictment by grand jury was filed against Hernandez for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a).  ECF No. 5.  The indictment states that Hernandez have been removed from the United States on or about September 17, 2014, and had been found in the country on or about July 11, 2015.  Id.  Defendant filed this motion on May 27, 2016, ECF No. 21, which the government opposed, ECF No. 22.  Defendant contends that the indictment must be dismissed because the IJ did not advise Hernandez of the relief of voluntary departure, and therefore the prior deportation was unconstitutional.  ECF No. 21.

## II.   LEGAL STANDARD

"Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause."  United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004) (citing U.S. v. Mendoza–Lopez, 481 U.S. 828, 837–38 (1987)).  In order to sustain a collateral attack, a defendant must show (1) that he "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review;" and (3) that "the entry of the order was fundamentally unfair."  Id. (quoting 8 U.S.C. § 1326(d)).  "An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and (2) 'he suffered prejudice as a result of the defects.'"  Id.  To prove prejudice, a defendant "need not show that he actually would have been granted relief; rather, he must show only that he had a 'plausible' basis for seeking relief from deportation."  Id. at 1103.

---

[1] Defendant has submitted an informal transcript of the proceedings, which the United States has agreed accurately reflects the hearing.  See ECF No. 21-1 at 19; ECF No. 22 at 2.

### III. DISCUSSION

Hernandez collaterally attacks his removal order by contending that the IJ failed to discuss with him the discretionary relief of voluntary departure. A "conclusion that the IJ may violate an alien's due process rights by failing to inform the alien of 'apparent eligibility' to apply for specified relief often serves as the linchpin of our analysis of § 1326(d)'s requirements." United States v. Vidal-Mendoza, 705 F.3d 1012, 1015 (9th Cir. 2013). First, "if the IJ has failed to provide information about apparent eligibility for relief," courts will excuse defendants from demonstrating the first prong of exhaustion of administrative remedies, "because we deem the alien's waiver of the right to an administrative appeal to have been insufficiently 'considered and intelligent' due to the IJ's error." Id. Second, courts find that the same error meets the second prong of deprivation of the opportunity for judicial review, "because an alien who is not made aware of his or her apparent eligibility for relief has had no meaningful opportunity to appeal the removal and seek such relief. Id. (citations omitted).

An IJ "must 'inform the respondent [in a deportation hearing] of his *apparent eligibility* to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and ... afford him an opportunity to make application therefor during the hearing.'" Moran-Enriquez v. I.N.S., 884 F.2d 420, 422 (9th Cir. 1989) (quoting 8 C.F.R. § 242.17(a)) (emphasis and alterations in original). The Ninth Circuit has elaborated that "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a *reasonable possibility* that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." Id. at 423. For example, the Ninth Circuit has found a due process violation where the record indicated that an alien's mother was a lawful permanent resident and his daughter was a citizen, therefore possibly entitling him to a § 212(h) waiver of inadmissibility, but the IJ failed to inform the alien of this potential relief. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).

Here, the government contends that there was no due process violation because Hernandez had been convicted of an aggravated felony, which barred him from voluntary departure. ECF No. 22 at 3; see also 8 C.F.R. § 1240.26(b)(1)(i)(E). The government cites to Ortiz-Magana v.

3

Mukasey, 542 F.3d 653, 654 (9th Cir. 2008) and United States v. Arreola-Leon, No. 209-CR-00164-JCM-GWF, 2010 WL 1553411, at *11 (D. Nev. Jan. 27, 2010), report and recommendation adopted, No. 2:09-CR-164 JCM(GWF), 2010 WL 1553413 (D. Nev. Apr. 16, 2010), for the proposition that assault with a deadly weapon under Cal. Penal Code § 245(a)(1) is classified as a crime of violence under 18 U.S.C. § 16(a) and therefore an aggravated felony. Because Hernandez did not have a reasonable possibility of obtaining relief from which he was statutorily barred, the government argues that the IJ did not err by failing to inform him of that relief. ECF No. 22 at 3-4.

Hernandez responds in two ways. First, he contends that under the recent authority of Johnson v. United States, 135 S. Ct. 2551 (2015) and Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015), the definition of "crime of violence" under 8 U.S.C. § 1101(a)(43)(F) with reference to 18 U.S.C. § 16 has been held unconstitutionally vague. Second, he contends that, contrary to the government's assertions, the Ninth Circuit has not definitively held that assault with a deadly weapon under § 245(a)(1) is a crime of violence, and that California case law suggests it is not. The Court addresses each of these arguments in turn.

### A. Johnson and Dimaya

In Johnson v. United States, the Supreme Court held that the "residual clause" definition of a violent felony under the Armed Career Criminal's Act was unconstitutionally vague. 135 S. Ct. at 2557. The Ninth Circuit subsequently considered, in Dimaya v. Lynch, whether similar language defining a crime of violence under 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16 was unconstitutionally vague for the same reasons. It concluded, after examining the language of both statutes and the judicial inquiries required by them, that section 16's definition of "crime of violence" was also unconstitutional under Johnson's reasoning. 803 F.3d at 1114 (comparing section 16's definition of a crime of violence as an "offense that is a felony and that, by its nature, *involves a substantial risk that physical force against the person or property of another may be used* in the course of committing the offense" with the ACCA's definition of a violent felony as "any crime punishable by imprisonment for a term exceeding one year [i.e. a felony] . . . that . . . *involves conduct that presents a serious potential risk of physical injury to another*." (emphasis in

4

original)).

Under Johnson and Dimaya, Hernandez contends that a conviction for assault with a deadly weapon can no longer qualify as an aggravated felony under the unconstitutionally vague section 16(a), and that Ninth Circuit case law holding otherwise is no longer valid. ECF No. 23 at 7. Therefore, Hernandez would no longer be statutorily barred from voluntary departure and should have been informed of this form of relief.

Hernandez fails to address, however, whether the decisions of Johnson and Dimaya, which were issued after Hernandez's removal hearing, should retroactively apply to his removal order. In U.S. v. Vidal-Mendoza, 705 F.3d 1012, 1019-1020 (9th Cir. 2013), a defendant charged with illegal reentry offered a similar argument, contending that the IJ erred by failing to inform him of his eligibility for voluntary departure based on a Ninth Circuit decision, issued four years after the removal hearing, holding that the defendant's crime did not qualify as an aggravated felony. The Ninth Circuit rejected that argument. It relied on the prior case of Lopez-Velasquez, 629 F.3d 894 (9th Cir. 2010), and held that "an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief *at the time of the hearing*." Vidal-Mendoza, 705 F.3d at 1016 (citation omitted) (emphasis in original). "[B]y the same token, an IJ need not anticipate futures 'change[s] in law' when determining an alien's apparent eligibility' for relief from removal." Id. (quoting Lopez-Velasquez, 629 F.3d at 895).[2] Because Vidal-Mendoza "potentially became eligible for [voluntary departure] only through Estrada-Espinoza's post-removal 'change in law,'" the Ninth Circuit held that "the IJ correctly informed Vidal–Mendoza that he was not apparently eligible for voluntary departure at the time of his 2004 removal hearing." Id. at 1021.

Further, this Court notes that the conclusion reached in Vidal-Mendoza should be distinguished from the Ninth Circuit's independent conclusion that subsequent law may be retroactively applied when the defendant is collaterally challenging the reason for *removability itself*. See U.S. v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006). As the Ninth Circuit explained in U.S. v. Aguilera-Rios, 769 F.3d 626, 632-633 (9th Cir. 2014), "there is good reason

---

[2] Vidal-Mendoza also recognized a "narrow exception" to this general rule that was not applicable in that case and is likewise not applicable here. See 705 F.3d at 1017-18.

1  to distinguish between discretionary relief . . . and grounds for removability for purposes of
2  collateral review of removal proceedings." "Where a noncitizen is in fact removable, the denial of
3  an opportunity to apply for a voluntary departure . . . does not implicate the propriety of a removal
4  in the same fundamental a way as does an IJ's legal determination that a noncitizen is removable
5  on the basis of precedent we now know to have been erroneous." Id. at 633.

6  Vidal-Mendoza's line of cases is applicable here. Hernandez does not assert that his
7  removal itself was invalid but rather that the IJ wrongly determined that he was ineligible for the
8  relief of voluntary departure. See ECF No. 21 at 5. Form I-862, which Plaintiff has submitted as
9  an exhibit, ECF No. 21-1 at 15, appears to charge that Hernandez is removable by virtue of
10 committing a crime of moral turpitude, not an aggravated felony. Accordingly, the Court
11 concludes that Johnson and Dimaya are not retroactively applicable to Hernandez's due process
12 claims.

### B. Ninth Circuit Case Law

Johnson and Dimaya notwithstanding, Hernandez offers additional reasons to disregard Ninth Circuit precedent in support of classifying § 245(a)(1) convictions as crimes of violence. Ortiz-Magana v. Mukasey, 542 F.3d 653, 654 (9th Cir. 2008), which is cited by the government in its brief, states unequivocally that assault with a deadly weapon under Cal. Penal Code § 245(a)(1) is a crime of violence under 18 U.S.C. § 16. At least two additional cases, United States v. Heron-Salinas, 566 F.3d 898, 899 (9th Cir. 2009), and United States v. Grajeda, 581 F.3d 1186, 1196 (9th Cir. 2009), reach the same conclusion.

Hernandez argues, however, that there are reasons to suspect the holdings in all three of these cases. First, he contends that Ortiz-Magana's conclusion that assault with a deadly weapon is a crime of violence was reached without analysis. ECF No. 23 at 6. To some extent, this is true. As the Ninth Circuit noted in a footnote in Grajeda, "in Ortiz–Magana the defendant conceded that section 245(a)(1) was a crime of violence under § 16, and the possibility that the offense might not require the necessary *mens rea* was neither raised nor addressed, as the court focused only on the defendant's argument that a conviction based on aiding or abetting was not a crime of violence." 581 F.3d at 1196 at n.8. Similarly, Hernandez argues that Heron-Salinas cites

1    Ortiz-Magana without analysis for the conclusion that assault with a deadly weapon under section

2    245(a)(1) is a crime of violence, before analyzing and concluding that assault with a firearm under

3    section 245(a)(2) is also a crime of violence. Heron-Salinas, 566 F.3d at 899. As for Grajeda,

4    Hernandez notes that the Ninth Circuit was focused in that case on the related question of whether

5    a conviction under section 245(a)(1) was a "crime of violence" under the Sentencing Guidelines,

6    § 2L1.2(b)(1)(A)(ii). Grajeda, 581 F.3d at 1187.

7         Even accepting at face value Hernandez's portrayal of the relevant Ninth Circuit law,

8    however, his argument is not persuasive. At base, all of the cases discussed here stand

9    (notwithstanding the effect of Dimaya) for the proposition that assault with a deadly weapon under

10   section 245(a)(1) is a crime of violence. That the analysis behind these holdings might have been

11   more robust is a far cry from demonstrating "apparent" eligibility for voluntary departure. On the

12   contrary, binding precedent of the Ninth Circuit – regardless of any reservations one might have

13   about the analysis supporting that precedent – established that at the time of Hernandez's removal

14   hearing, he was statutorily barred from voluntary departure.

15        Hernandez's arguments relying on California law do not refute this conclusion. Hernandez

16   contends that assault with a deadly weapon, as defined under section 245(a)(1) and "[a]s construed

17   by the California Supreme Court . . . lacks both the *mens rea* and the level of force that are

18   required under § 16(a)." ECF No. 23 at 7. However, he is unable to point to a California case that

19   directly reaches this holding in relation to either element. Rather, in regards to *mens rea*, he points

20   to Fernandez-Ruiz v. Gonzalez, 466 F.3d 1121 (9th Cir. 2006) (en banc), in which the Ninth

21   Circuit held that an Arizona conviction for domestic violence was not a "crime of domestic

22   violence" under federal law for removal purposes, because the Arizona statute permits convictions

23   for reckless but unintentional conduct, and because the defendant's conviction in that case did not

24   demonstrate intentional use of force. He then points to other cases that suggest that assault under

25   California law likewise requires "only an intentional act" and not intention to use force. ECF No.

26   23 at 9. Similarly, in regards to the required level of force, he cites to Ortega-Mendez v.

27   Gonzales, 450 F.3d 1010, 1016-18 (9th Cir. 2006), which held that battery under Cal. Penal Code

28   § 242 does not require the requisite amount of force to constitute a crime of violence under § 16,

United States District Court
Northern District of California

and argues that because the language of sections 242 and 245 are similar, the same conclusion should be reached for crimes under section 245.  ECF No. 23 at 10.

Once again, in the face of Ortiz-Magana, Heron-Salinas, and Grajeda, these arguments are unconvincing.  Under those cases, the IJ fulfilled its duty of informing Hernandez of all relief to which he was apparently eligible.  A contrary result would require this Court to conclude that that the IJ violated due process by declining to disregard binding Ninth Circuit precedent in favor of Hernandez's arguments involving cases that discuss different crimes than the one at issue here.

Accordingly, the Court concludes that because the case law at the time of Hernandez's removal hearing established that he was statutorily barred from the relief of voluntary departure, he had no "apparent eligibility" for that relief.  Therefore, the IJ's decision to decline to discuss voluntary departure with Hernandez was not a violation of due process.  Hernandez has failed to meet the first two requirements for collaterally challenging his removal order.  The Court need not address the final requirement of prejudice.

**CONCLUSION**

For these reasons, Hernandez's motion to dismiss his indictment for illegal reentry is denied.

IT IS SO ORDERED.

Dated: July 5, 2016

_____
JON S. TIGAR
United States District Judge

8